# United States District Court
## for the
## Western District of New York

| | |
|---|---|
| United States of America<br>v.<br>**Cameron Lambert**<br>*Defendant* | Case No. 19-mj- 44 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

(1) On or about April 1, 2019, in the Western District of New York, the defendant, CAMERON LAMBERT, unlawfully did knowingly possess a machinegun, that is, a "Glock conversion devices", unknown manufacturer, bearing no serial number and bearing a counterfeit Glock logo and "MADE IN AUSTRIA" print, in violation of Title 18, United States Code, Sections 922(o)(1) and 924(a)(2).

(2) On or about April 1, 2019, in the Western District of New York, the defendant, CAMERON LAMBERT, did knowingly possess a firearm, that is, a machinegun described as a Glock conversion devices, not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Sections 5841, 5861(d), and 5871.

This Criminal Complaint is based on these facts:

☒   Continued on the attached sheet.

ADAM P. TYNA
Special Agent
Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: April 2, 2019

*Judge's signature*

City and State: Buffalo, New York

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK        )
COUNTY OF ERIE           )   SS:
CITY OF BUFFALO          )

**ADAM P. TYRNA**, being duly sworn, deposes and states:

1. Your affiant is a special agent with Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) and has been so employed for nine years. Prior to the employment with HSI, your affiant served as a U.S. Customs and Border Protection (CBP) Officer for two years. As a requirement for employment as an HSI special agent, your affiant successfully completed a twelve-week Criminal Investigator Training Program (CITP) located at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. At the conclusion of CITP, your affiant also completed an additional twelve-week ICE Special Agent Training (ICESAT) Academy. As part of the training at FLETC, your affiant received extensive instruction in the areas of immigration law, customs law, criminal law, firearms training, rules of evidence, and interview techniques. Your affiant's law enforcement experience includes conducting physical surveillance, interviewing witnesses, victims and suspects, writing affidavits for and executing search warrants, handling confidential informants, analyzing phone records obtained from subpoenas, search warrants, pen registers, trap and trace devices, and collecting and processing evidence.

2. I submit this affidavit in support of an application for a criminal complaint charging CAMERON LAMBERT (hereinafter, "LAMBERT") with violating Title 18, United States Code, Section 922(o), Unlawful possession of a machinegun, as defined in Title 26, United States Code, Section 5845(b) of the National Firearms Act (NFA); and Title 26, United States Code, Section 5861(d), Possession of an unregistered firearm, as defined as defined in Title 26, United States Code, Section 5845(a) of the NFA. As discussed below, there is probable cause to believe that LAMBERT did knowingly and willfully commit the Subject Offenses.

3. I am familiar with all aspects of this investigation as a result of my participation in this investigation, as well as conversations with other law enforcement officers, and review of documents and records obtained by individuals to include but not limited to HSI Special Agents, United States Postal Inspection Service (USPIS), and United States Customs and Border Protection ("CBP") officers.

4. Because this affidavit is being submitted for the limited purpose of applying for a criminal complaint, I have not included every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish the required foundation for the requested criminal complaint.

## RELEVANT STATUTES

5.      This investigation concerns violations of Title 18, United States Code, Section 922(o) (unlawful possession of a machinegun, as defined in Title 26, United States Code, Section 5845(b) of the NFA); and Title 26, United States Code, Section 5861(d), (possession of an unregistered firearm, as defined as defined in Title 26, United States Code, Section 5845(a) of the NFA).

6.      Title 18, United States Code, Section 922(o) makes it a crime for any person to possess a machinegun.

7.      Title 26, United States Code, Section 5845(b) defines a machinegun as any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

8.      Title 26, United States Code, Section 5861(d) makes it a crime for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.

9. Title 26, United States Code, Section 5845(a) defines a firearm as (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer (as defined in section 921 of title 18, United States Code); and (8) a destructive device. The term "firearm" shall not include an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon.

## PROBABLE CAUSE

10. On March 12, 2019, CBP Officer J. Pimentel intercepted a United States Postal Service (USPS) parcel entering the United States at the International Mail Facility in Los Angeles. The parcel (herein after the "Subject Parcel") was shipped from China. The label on the Subject Parcel indicated that the parcel contained a "screwdriver." Law enforcement received information that the Subject Parcel was suspected to contain a device used to convert a Glock semi-automatic pistol to fire in full-automatic mode. Pursuant to their border search authority, CBP officers examined the parcel and found part of a device used to convert a Glock semi-automatic pistol to fire in full-automatic mode. The device part is branded with the Glock logo and an inscription that reads "Made in Austria."

11. In addition, law enforcement information pertaining to "Glock conversion devices" indicate that these devices are being shipped into the United States from China via the USPS and are being manifested/declared as "screwdriver" in order to avoid law enforcement detection. The Subject Parcel is included in a list of parcels that had recently been intercepted by CBP that contained these conversion devices.

12. Based upon your affiant's training, experience, and discussions with other federal law enforcement personnel related to the investigation of federal firearms law violations, your affiant is aware of conversion devices that have been designed and created for the sole purpose of converting semi-automatic Glock pistols into fully automatic machineguns. These devices vary by design and appearance, but all, when properly installed on a semi-automatic Glock pistol, will allow the firearm to expel more than one projectile by a single pull of the trigger at a rate of approximately 1,200 rounds per minute. Installation of these conversion devices is fast and simple, requires no technical expertise, and is completed by removing the polymer slide cover plate on a Glock semi-automatic pistol and replacing it with a conversion device. Your affiant also knows that these devices are referred to by different names, including but not limited to: "switches," "auto sears," "convertors," "conversion switches," "selector switches," "conversion devices," and "Fire Selector Systems for Glock" (FSSGs).

13. Furthermore, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) considers Glock conversion devices post-May 19, 1986, as machineguns. Apart from official military and law enforcement use, Glock conversion devices may only be lawfully

5

possessed by licensed Federal Firearms Licensees (FFLs) who have paid the appropriate Special Occupational Tax (SOT) required of those manufacturing, importing, or dealing in NFA weapons.

14. On March 21, 2019, CBPO Pimentel seized the Subject Parcel and forwarded it to your affiant for an attempted controlled delivery to the individual addressed on the parcel.

15. On April 1, 2019, law enforcement personnel from HSI, CBP, and ATF, assisted the USPIS with the controlled delivery of the Subject Parcel to the address on the parcel. The Subject Parcel was successfully delivered to an individual [herein after "Cooperating Defendant (CD) 1"] at the address listed on the parcel.

16. During a subsequent interview of CD1, CD1 stated that CD1 agreed to order the conversion device for Cameron LAMBERT because LAMBERT intended to affix the conversion device to a Glock handgun that LAMBERT was piecing together. CD1 agreed to place a consensually monitored phone call to LAMBERT to inform LAMBERT that CD1 had received the device and to deliver the conversion device to LAMBERT.

17. During that call, CD1 informed LAMBERT that "That Glock part came in." LAMBERT acknowledged that the Glock part came in by stating "Sweet, sweet, sweet." Also, during the call, LAMBERT told CD1 that "You should meet me at my grandpa's [residence] when we go there, that way we can put it on." When HSI personnel asked CD1 what LAMBERT meant by "put it on," CD1 informed the HSI personnel that LAMBERT

was piecing together a Glock handgun and that LAMBERT had shown CD1 videos of LAMBERT firing that handgun.

18. Later, on April 1, 2019, CD1 made and received additional consensually monitored phone calls with LAMBERT. During another call, LAMBERT asked CD1 "could you pass through here and drop that off?" During that call CD1 and LAMBERT agreed to meet at a local retail store in order to transfer the conversion device from CD1 to LAMBERT.

19. On April 1, 2019, CD1 met LAMBERT in the parking lot of a retail store. CD1 and LAMBERT exited their vehicles and stood at the rear of CD1's vehicle. CD1 opened the trunk of CD1's vehicle, reached inside, removed the conversion device (still inside of the original USPS packaging) and handed the device to LAMBERT. When both individuals returned to their vehicles, they were encountered by HSI personnel and taken into custody. Once in custody, LAMBERT stated to HSI personnel that he believed he was taken into custody because of the item that he received from his friend.

20. Also, on April 1, 2019, personnel from the Niagara County Sheriff's Office verified that LAMBERT did not possess a New York State pistol permit and that LAMBERT was not of the required age to be eligible to receive a New York State pistol permit.

21. Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that: CAMERON LAMBERT has committed, and is committing, violations of Title 18, United States Code, Section 922(o) (unlawful possession of a machinegun, as

7

defined in Title 26, United States Code, Section 5845(b) of the NFA); and Title 26, United States Code, Section 5861(d), (possession of an unregistered firearm, as defined as defined in Title 26, United States Code, Section 5845(a) of the NFA).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

_____
ADAM P. TYRNA
Special Agent, Homeland Security Investigations

Subscribed and sworn to before me

This 2nd day of April, 2019.

_____
HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge

8